MARÍA RAMOS, Plaintiff and Appellant, *v.* MANUEL AVILÉS and JUAN ROMERO AGOSTO, Defendants and Appellees.

No. 8346. Argued May 22, 1941.—Decided May 27, 1941.

728

*A. Casanova Prats,* for appellant. *G. Benítez Gautier,* for appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

By private instrument executed before Notary Juan Lastra, plaintiff bought from defendant Manuel Avilés two houses in Santurce, for the agreed price of $260, to be paid as follows: $100 which the vendor received upon executing the deed, and the remaining $160 to be received by him when he should deliver the houses to the purchaser, for which a term of fifteen days from the date of the contract was fixed. As the term fixed for the delivery of the houses elapsed in excess and it was not made, the complaint for unlawful detainer was filed in this case, plaintiff alleging to be the owner of the said real property which she describes; that defendant had bound himself to deliver it to plaintiff within the term hereinbefore mentioned, without doing it up to the

date of the complaint, and that the defendant was occupying the said property against the will of the plaintiff without paying any rent, holding it precariously, ending with the prayer that the defendant be ousted, with costs, and attorney's fees to the plaintiff.

The defendant Avilés answered. He accepted the execution of the contract in the terms mentioned, but alleged that the defendant owed him yet the deferred purchase price of $160, and that, of the $100 whose receipt he acknowledged at the time of the execution of the contract, he only had received $50, which plaintiff handed to the defendant in five $10 bills and not in $20 bills as believed by the defendant, a thing which he noticed the following day and which he notified to the plaintiff three days after the execution of the contract.

At the trial, the plaintiff presented in evidence the deed of sale, admitted that she had not paid the defendant the $160 of the deferred purchase price, and insisted on that she had paid the $100 in five $20 bills which the defendant put away, refusing to count them in her presence, notwithstanding that the plaintiff and the Notary, Mr. Lastra, urged him to do so. That a day before the fifteen days hereinbefore mentioned expired, the plaintiff went to the house of the defendant and requested him to surrender the real property and that it was then when for the first time the defendant told her that he only had received $50 instead of the $100 mentioned in the contract, plaintiff always insisting that the said sum had been totally delivered.

The lower court, after making a summary of the pleadings and the evidence in the opinion which served as basis for its judgment dismissing the complaint, establishes the following:

"Those being the facts established by the evidence, which refer to a controversy as to the payment of the price of a sale, the court does not consider itself in a position to be able to decide that the

plaintiff is the owner of the property, in relation to the summary unlawful detainer proceeding.

"In the case of *Vallés* v. *Rivera,* reported in 40 P.R.R. 151, it was alleged by the defendant that if she had consented that a cross be placed as her signature on a document which was offered in evidence to prove the title of the plaintiff, it was because she believed that what she was signing was a promissory note, and the Court decided the case in the following way:

"'The purity of legal procedure requires, and the constant jurisprudence of this court maintains, that such a title controversy as this must not be decided in a summary action of unlawful detainer.'

"Even though in the case at bar it is not alleged that a document was signed through a misconception, nevertheless, it is alleged that the price agreed upon was not paid and there exists therefore, a controversy concerning an essential element of the contract of sale, and upon the decision of this controversy it will depend whether the defendant is or is not compelled to surrender the house, and whether or not the plaintiff is the real owner of the property.

"We are of the opinion that this controversy, as in the case of *Vallés* v. *Rivera,* cannot be settled in a summary unlawful detainer proceeding but must be decided in another proceeding which may be an action for the specific performance of the contract or requesting the rescission of the same, according to the best interest of the party plaintiff."

██ The judgment was rendered the 18th of February, 1941, and notified to the plaintiff three days later. A day before the judgment was notified, the plaintiff filed a motion for reconsideration, which was set to be heard on the 28th of the same month, date in which after hearing the parties, the court denied the motion for the reasons stated in the cited opinion.

This order was notified on March 3, 1941, to the plaintiff, and four days later she filed a notice of appeal.

Two motions have been filed by the defendant-appellee in opposition to this appeal. In the first, she requests that the appeal be dismissed because the notice of appeal was filed out of time. In the second, she prays that the judgment be affirmed because as it is based on the existence of a conflict

of title, its reversal does not lie unless it be shown that the court *a quo* in appraising the evidence was moved by bias, prejudice or partiality.

The first motion must be denied, because before the term to appeal had elapsed, the plaintiff moved for the reconsideration of the judgment, and this motion was denied after a hearing had been set, and the parties heard, the appeal having been filed four days after the plaintiff was notified of this last order.

■ The second must be almust be also denied. When the court holds in an unlawful detainer action in which a conflict of title arises, that the same should not be decided within said proceeding, it decides an issue of law and not a question of fact, and therefore, it is not necessary to prove that the judge, in the appraisal of the evidence, was moved by bias, prejudice or partiality, for he · could have appraised it correctly and yet be mistaken in the application of the law.

■■ Let us now consider the appeal on its merits.

From the evidence of this case a lack of a cause of action rather than a conflict of title is apparent. The obligation of the defendant to deliver possession of the house, and that of the plaintiff to pay the deferred price, are reciprocal obligations.

Manresa, considering this kind of obligations, says:

"The fact that the obligations are bilateral or reciprocal brings about that the two parties, necessary for the contractual relation, are at the same time debtor and creditor to each other. But this is not enough; this feature of these obligations means something more: a reciprocity so complete that it makes both relations arise from an only cause, each obligation being also a condition to the other one, and in brief, one cannot be conceived without the other. Thus, for example, a person can be another's debtor by reason of agency and at the same time his creditor by reason of a loan; and no one will say that they are reciprocal obligations, because they and are conceived independently, and proceed from different causes. Furthermore: if the loan of a specific thing is made, the borrower must pay, or the lender may have the duty of repaying the former, for

any expenses arising from the object loaned, and yet, in those obligations the quality of reciprocity in its true sense is nowhere present; because if we distinguish well between them, it can be seen that they do not strictly have their origin in one same, *identical* cause, and, above all, that they do not arise at the same time, as being both of them necessary, and mutually a base the one for the other. On the other hand, we do fully appraise that quality of reciprocity by comparing, in a contract of sale, the obligations of purchaser and vendor to respectively deliver to each other the price and the object; or in a lease those of landlord and tenant, to give the one the use of the leased remises, and the other to pay the agreed rental, etc.; and this is so because in all these cases we cannot imagine how one obligation can exist without the other unless we change their nature." 8 *Comentarios al Código Civil* 148, 149.

As these obligations are mutual, the last paragraph of Section 1053 of the Civil Code (1930 ed.) is applicable to them. It reads:

"In mutual obligations none of the persons bound shall incur default if the other does not fulfill or does not submit to properly fulfill what is incumbent upon him. From the time one of the persons obligated fulfills his obligation the default begins for the other party."

We shall not decide at present, because we do not deem it necessary to this opinion, whether or not the plaintiff paid the whole of the $100, hereinbefore mentioned. As the defendant did not incur in delay *(mora)* in this case, since the deferred purchase price was not paid to him the plaintiff buyer does not have the right to demand from the defendant that he deliver the purchased property. In order that that right may exist, it is necessary that the plaintiff first fulfill her obligation, previously paying the deferred purchase price or enclosing the said amount with the complaint in unlawful detainer, at the order of the defendant, to be delivered to him once the judgment is executed or when the delivery of the real property is shown. See to this effect the judgment of the Supreme Court of Spain of January 4, 1866 which holds that "one who does not fulfill the obligation which

he imposed upon himself in the contract, *does not have a right to demand, the duties being mutual and correlative, that the other party do what it had promised to do."* (Italics supplied.)

For the foregoing reasons, the judgment appealed from must be affirmed.